555 So.2d 623 (1989)
STATE of Louisiana
v.
Jose M. ORTIZ (Two Cases).
Nos. 89-K-1068, 89-K-1079.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1989.
*624 Harry F. Connick, Dist. Atty., Donna M. Borrello, Asst. Dist. Atty., New Orleans, for respondent.
Richard B. Stricks, New Orleans, for relator.
Before BARRY, GARRISON and KLEES, JJ.
BARRY, Judge.
The defendant was charged with four counts of indecent behavior with juveniles,[1] B.B., age 8, M.B., age 7, C.B., age 5, and T.B., age 5. R.S. 14:81. He filed requests for subpoenas duces tecum seeking documents from Supt. of Police Warren Woodfork, District Attorney Harry Connick, Charity Hospital, Records Custodian at the Child Protection Center (DHHR), Hotel Dieu Hospital, Orleans Parish School Board and Dr. Sara Foulks, and Dibert School. There were no other defense subpoenas. The record contains State requests for subpoenas duces tecum directed to Mrs. Young, principal of Fisk Howard School, Dr. Ruiz at DHHR, and Hotel Dieu Hospital records custodian Ms. Federer. Three State subpoenas duces tecum are in the record and three of the four packets which contain information at issue are attached to the State's subpoenas. The fourth packet is attached to a defense request for a subpoena duces tecum to Dibert School.
The State filed a motion to quash the defense subpoenas which was granted in part and denied in part. The defense and State filed writ applications and all proceedings were stayed. We then ordered the trial court to provide a per curiam and documentation as to the defense's seven subpoenas duces tecum.
The trial judge's per curiam states that the subpoenas to Supt. Woodfork, Charity Hospital, and D.A. Connick were satisfied. The trial judge listed the records which were produced from Hotel Dieu's Dr. Rosalba Ruiz (DHHR), Mrs. Hilda Young (Principal at Fisk Howard School), and John Dibert School.
The State's subpoenas duces tecum were issued and documents produced. The trial judge's per curiam states he requested the Asst. District Attorney to contact individuals and/or agencies to obtain records which the State delivered to the judge for inspection. We therefore know the State had access to the records prior to the trial judge's in camera determination; therefore, the motion to quash (whether the court should modify the subpoenas if it considered them unreasonable or oppressive) became moot.
The trial judge couched his ruling based on a motion to quash, but it is clear he made a determination as to what was discoverable by the defense. The trial court conducted an in camera inspection of the documents and made a Brady determination. The judge denied the motion to quash based on Brady and granted the motion as to records which were not discoverable.
Our initial concern is that the subpoened records by the defense were in the State's possession and therefore controlled by Brady-Bagley jurisprudence (discussed later). Had the records been given by third parties (agency,[2] hospital, school) to the defense, the issue would have turned on what was privileged material and not discoverable.[3] *625 The defense filed a motion for discovery and inspection (expressly requesting Brady material) and motions for a bill of particulars and exculpatory evidence. Therefore, the trial court decision was a Brady ruling.

THE LAW
Evidence that is favorable to the accused and material as to guilt or punishment must be disclosed to the defense. The prosecutor is not required to deliver his entire file, but must disclose evidence that, if suppressed, would deprive the defendant of a fair trial. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Impeachment evidence as well as exculpatory evidence falls within the Brady rule where credibility of that witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Porretto, 468 So.2d 1142 (La.1985).
Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Although the jurisprudence involves review after trial and conviction, we must utilize the guidelines to determine what usually privileged medical and psychological records of the child victims should be discoverable.

RULINGS
The trial court properly granted the State's motion to quash the school records of B.B. and C.B., and C.B.'s multidisciplinary integrated report from Dibert School. There is nothing in those scant private records to indicate their need to prepare a defense.
The trial court granted in part and denied in part the motion as to the DHHR records returned pursuant to the subpoena issued to Dr. Ruiz and stated:
That is, there is certain information that I feel is relevant to the defense in that case, which I will provide to Mr. Stricks [defense counsel]. There is other information which I feel is not relevant to this particular case which I will deny Mr. Stricks at this time.
We assume M.B.'s psychosocial, psychological, and psychiatric evaluations dated February 11, 1988 as well as a transfer summary and the social worker's progress notes on family sessions are the records requested by the defense.[4] DHHR records are confidential and generally should not be released. La.R.S. 46:56; State v. Stamm, 527 So.2d 367 (La.App. 4th Cir. 1988).
Although we find confidential statements (made by the mother to the psychologist and psychiatrist) that might pertain to M.B.'s veracity as a witness, we deem it improper to allow all of her evaluations and confidential notes on family sessions to be turned over to the defense. We reverse that part of the ruling which denies the motion as to the DHHR records. There is nothing in the several DHHR documents (ruled not discoverable) to warrant disturbing the trial judge's ruling which grants the motion as to DHHR records.
The motion as to M.B.'s Fisk Howard School records was granted in part and denied in part. The documents are a retention study form and part of a school multidisciplinary integrated report which contain nothing relevant for impeachment. The records include statements by the mother that M.B.'s problems (in the DHHR record previously discussed) had been corrected. Those documents would not assist the defense and should be privileged. There is nothing in the cumulative file documents *626 (held not discoverable) which should be released and that ruling was proper. We reverse the ruling insofar as it denies the motion to quash and grant the motion as to all school documents.
The trial judge granted in part and denied in part M.B.'s Hotel Dieu records. The materials which were denied do not contain identifiable Hotel Dieu records. The trial judge noted there was information in those records which indicates "tendencies of violence or aggressive behavior on behalf of [M.B.]" which he felt was relevant. He also stated he felt the information was exculpatory and tended "to show the lack of guilt or culpability" of the defendant.[5]
The Hotel Dieu records on the child's bladder problems are immaterial to the defense and the motion was properly granted. We reverse the ruling as to the hospital documents which were held discoverable and grant that motion.

CONCLUSION
The privacy of child victims should be protected and their confidential records should not be released when not material as based on Brady-Bagley.
Access to B.B.'s and C.B.'s Dibert School records was properly denied.[6] Dr. Ruiz's DHHR highly confidential records relative to M.B.'s psychological, psychosocial and psychiatric evaluations should not be released and the motion to quash should have been granted. The defense has not shown a sufficient basis for M.B.'s Fisk Howard School records and the motion to quash should have been granted. Similarly, the motion should have been granted to protect M.B.'s Hotel Dieu records.
We reverse the trial judge's ruling insofar as it denies the State's motion to quash. We affirm the ruling insofar as it grants the motion to quash.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] The minor's names are deleted to protect their identity.
[2] Some records were in the possession of the Department of Health and Human Resources. Those could be considered in the State's possession for discovery purposes.
[3] The same obligation for pre-trial discovery cannot be imposed on third parties as may be imposed on the State. Under the ABA Standards for Criminal Justice (approved draft 1970), Standard 11-2.5, Discretionary Disclosures, upon a showing that the documents are material to defense preparation the court in its discretion may require disclosure to defense counsel. Under Standard 11-4.8 (Supp.1982), the court may order third parties to permit review of any specified records and may deny the disclosure if it finds a substantial risk of certain harms to any third party which would outweigh the usefulness of the disclosure. The commentary following Standard 11-4.8 notes that such disclosures require careful judicial supervision to prevent unnecessary intrusions into third party privacy rights. The moving party must show the required disclosure is reasonable and relevant to the preparation of the case.
[4] The records which were denied were paper clipped together in an envelope with DENIED written across. We can only attempt to determine the particular papers provided pursuant to each subpoena.
[5] The DHHR records previously discussed do mention prior aggressive or violent behavior, but such information is not material to the preparation of the defense or for impeachment purposes.
[6] We do not condone ruling on discovery motions at a motion to quash hearing, but agree that the records should not be turned over to the defense.