### Cory J. BEAVER

v.

### EXXON MOBIL CORPORATION and ABC COMPANY

No. 03 CV 708.

United States District Court, M.D. Louisiana.

March 23, 2005.

Rodney Nicholas Erdey, Denham Springs, LA, Harold Craig Davidson, Jr., Davidson Law Firm, LLC, Baton Rouge, LA, for Plaintiff.

Charles S. McCowan, Jr., Donna V. Yelverton, Louis Victor Gregoire, Jr., Melissa Ann Hemmans, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

Pending before the court is a motion for summary judgment (doc. 18) filed by the defendant, Exxon Mobil Corporation ("ExxonMobil"). Cory J. Beaver ("plaintiff") filed an opposition (doc. 23) to which ExxonMobil replied (doc. 24). Plaintiff then filed a supplemental opposition (doc. 29) and ExxonMobil promptly filed a supplemental reply (doc. 32). Also before the court is a motion to strike filed by Exxon-Mobil (doc. 25).

## I. BACKGROUND

Prior to the plaintiff's injury, ExxonMobil entered into a contract with Fluor Daniel to modify ExxonMobil's Baton Rouge refinery. Fluor Daniel, in turn, subcontracted with J.E. Merit Construction Company, plaintiff's employer, to provide services required under its contract with ExxonMobil.

On March 5, 2003, plaintiff was walking across the parking lot of the ExxonMobil refinery when he stepped into a deep hole obscured by water, thereby causing him to fall and sustain injuries. Specifically, the plaintiff has undergone one knee surgery and, according to his petition, will probably require a future knee surgery. At the time of the incident sued upon, plaintiff was employed by J.E. Merit as a general laborer and was performing work at the ExxonMobil Baton Rouge refinery in accordance with the contracts in effect between ExxonMobil and Fluor Daniel and the subcontract between Fluor Daniel and J.E. Merit.

ExxonMobil argues it is entitled to summary judgment based on the premise that it is a statutory employer pursuant to La. R.S. 23:1061(A)(2), which is commonly referred to as the "two-contract" theory.[1]

---

1. La. R.S. 23:1061(A)(2) provides that: "[a] statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer."

ExxonMobil further argues that plaintiff's injuries arose out of and in the course of his employment with ExxonMobil. Therefore, ExxonMobil contends that plaintiff's exclusive remedy is the receipt of worker's compensation benefits.

On the other hand, plaintiff asserts the "two-contract" theory applies only to the principal who has contracted with a third party. Hence, the plaintiff argues Fluor Daniel is the principal that would be entitled to invoke the statutory employer defense and ExxonMobil is merely a third party who does not meet the criteria for such a defense.

## III. ANALYSIS

The issue before the court is whether an entity in the position of ExxonMobil may avail itself of the "two contract" statutory employer defense pursuant to La. R.S. 23:1061(A)(2). As stated above, ExxonMobil entered into a contract with Fluor Daniel for modifications to be performed at ExxonMobil's Baton Rouge refinery. Then, Fluor Daniel entered into a contract with J.E. Merit to perform all or part of the services Fluor Daniel was obligated to perform for ExxonMobil. Based on these facts, Fluor Daniel was the general contractor and J.E. Merit was the subcontractor.

**A. In order to raise the "two contract" defense, one must meet each of the elements established by the Louisiana Supreme Court.**

In *Allen v. State of Louisiana through the Ernest N. MorialNew Orleans Exhibition Hall Authority and Scottsdale Insur-*

*ance Co.,* 02–1072 (La.4/9/03), 842 So.2d 373, the Louisiana Supreme Court set forth the elements to assert the statutory employer defense pursuant to the "two-contract" theory.[2] The facts in *Allen* are somewhat similar to those of the instant lawsuit, except for one notable distinction; namely, the party seeking the statutory employer defense, the Convention Center, was not in the same position as ExxonMobil in this case.

Specifically, the Convention Center had contracted with Aramark to provide catering services for conventions and other events. Next, the Convention Center contracted with ACE Hardware ("ACE") to provide a venue for its national show. The injured plaintiff was an employee of the subcontractor, Aramark, and filed suit for damages against the Convention Center. The distinction between *Allen* and this case is that the Convention Center was obligated to perform work in order to fulfill its obligation to ACE. Compared to the suit at hand, ExxonMobil had no obligation to perform work and certainly did not subcontract any work it was to perform. Important to this lawsuit is the *Allen* Court's statement that:

> [I]n order to raise the 'two contract' defense, a defendant must establish only that: (1) it entered into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the defendant to fulfill its contractual obligation to perform the work, the defendant entered into a subcontract

2. The Court granted writs in *Allen* to determine "whether, under the 'two-contract' theory of the statutory employer defense, the defendant must enter into a principal contract with a third party for the performance of specified work *before* entering into a subcontract for the performance of all or part of that work in order to avail itself of the statutory

employer defense." *Allen*, 842 So.2d at 377 (emphasis in original). The Court held there was not a temporal requirement; however, that issue is irrelevant to the analysis in the instant ruling. For the purpose of this ruling, the importance of *Allen* lies in the requirements established by the Court to raise the "two contract" defense.

for all or part of the work performed.

*Id.* at 383 (emphasis added).

■ When examining the facts at hand, it appears ExxonMobil cannot meet the requirements set forth in *Allen*. For example, ExxonMobil was not required to perform work in order to fulfill its contractual obligation. Furthermore, ExxonMobil did not enter into a subcontract for any work that it was allegedly to perform. It merely entered into one contract with Fluor Daniel, which was obligated to perform work to fulfill its contractual obligation to ExxonMobil, and Fluor Daniel subcontracted part of the work to be performed to J.E. Merit. ExxonMobil's only obligation was to pay Fluor Daniel for services rendered. For these reasons, ExxonMobil seemingly does not meet the elements established by the *Allen* Court.

**B. ExxonMobil argues that the "two contract" theory has been extended to provide statutory immunity to the owner of a building against claims of negligence asserted by an employee of a subcontractor.**

ExxonMobil's argument on this point rests on the Louisiana Fifth Circuit's decision in *Orillion v. Alton Ochsner Medical Foundation,* 96–494 (La.App. 5 Cir. 11/26/96), 685 So.2d 329, *writ denied* by 96–3046 (La.2/21/97), 688 So.2d 518. In *Orillion,* the owner of the building, Alton Ochsner Medical Foundation ("Ochsner"), was in a similar position to that of Exxon-Mobil in the case at hand (i.e. the third party). The building under construction was owned by Ochsner with Brice Building Company ("Brice") as the general contractor. Brice had contracted with Rush Masonry ("Rush"), plaintiff's employer, to perform the masonry work. The plaintiff, while in the course and scope of his employment, fell from the scaffolding and sustained injuries that left him in a para-plegic state. Plaintiff then filed suit against Ochsner, as owner of the project, and Brice, as general contractor.

Like the plaintiff in this lawsuit, the plaintiff in *Orillion* was the employee of a subcontractor. Furthermore, Ochsner was at the top of this contractual pyramid with no obligation to perform any work. As ExxonMobil in the instant lawsuit, Ochsner's only obligation was to pay the principal, Brice. Hence, the facts in *Orillion* appear to be on point with the motion before this court. The Louisiana appellate court correctly found Brice, the general contractor, was the principal and was entitled to the statutory employer defense pursuant to the "two contract" theory.

The appellate court also upheld the trial court's dismissal of Ochsner pursuant to the "two contract" statutory employer defense. However, the dissent expressly states "the two contract rule does not apply to Ochsner because Ochsner is one step removed from the contract between the general contractor and the subcontractor." *Orillion,* 685 So.2d at 333 (Gothard, J., dissenting). Similarly, ExxonMobil is also one step removed from the contract between Fluor Daniel and J.E. Merit. Interestingly, the majority stated:

> The purpose behind the two contract theory is to establish a compensation obligation on the part of the principal **who contractually obligates itself to a party for the performance of work and who then subcontracts with intermediaries whose employees perform any part of that work.** In return for [its] compensation obligation, such a principal is thus insulated from tort liability.

*Id.* at 332 (emphasis added)(citing *Thomas v. Department of Transportation and Development,* 27,203 (La.App. 2 Cir. 10/12/95), 662 So.2d 788, 792).

Ochsner did not contractually obligate itself to a party for the performance of work, nor did it subcontract with intermediaries to perform any work. It would appear that Ochsner's conduct does not fit the purpose of the "two contract" rule as stated by the Louisiana Fifth Circuit. Nevertheless, the Fifth Circuit upheld the trial court's dismissal of Ochsner pursuant to the "two contract" statutory employer defense. However, the court failed to analyze or explain the dismissal of Ochsner.

Therefore, the holding in *Orillion,* as it pertains to Ochsner, is questionable at best. For these reasons, the undersigned is hesitant to extend the "two contract" rule to ExxonMobil based solely on the holding in *Orillion.* Furthermore, other courts have described the "two contract" rule in a manner that suggests the protected party is the principal which is obligated to perform work and then subcontracts out all or part of that work to a subcontractor. *See Thomas v. Department of Transportation and Development,* 27,203 (La.App. 2 Cir. 10/12/95), 662 So.2d 788.

**C. According to judicial interpretations of La. R.S. 23:1061(A)(2), ExxonMobil is not a "principal;" rather, it is a "third party" and, therefore, not entitled to the "two contract" statutory employer defense.**

In *Thomas v. Department of Transportation and Development,* 27,203 (La.App. 2 Cir. 10/12/95), 662 So.2d 788, the Louisiana Second Circuit was confronted with a case that was factually similar to the one before this court now. The Department of Transportation and Development ("DOTD") contracted with Madden Contracting Co. ("Madden") to resurface a stretch of highway. *Id.* at 791. Penton Construction Company ("Penton") entered into a verbal contract with Madden to haul asphalt hotmix to the repair project. *Id.* The plaintiff was employed by Penton as a driver for an 18–wheel tractor-trailer rig. *Id.* The plaintiff's truck struck a pothole and was forced onto the highway's shoulder. *Id.* The shoulder gave way and the truck rolled over, spilling its load. *Id.* As a result, the plaintiff was covered in hot asphalt and sustained serious burns. *Id.*

Plaintiff filed suit against DOTD claiming that the accident was caused by a defect in the road. *Id.* At trial, DOTD moved for summary judgment claiming that it legally occupied the position of plaintiff's statutory employer. *Id.* DOTD's motion was denied and the case proceeded to trial. *Id.* DOTD appealed claiming, among other things, that the trial court's refusal to recognize it as plaintiff's statutory employer was an error. *Id.*

DOTD argued two premises supporting its claim for statutory employer status. *Id.* For the purposes of this ruling, the undersigned will focus on DOTD's argument that it, as principal, entered into a contract with Madden, a third party, for the project. DOTD further argued that Madden entered into a contract with Penton, the subcontractor, for the performance of part of the work.

In holding that DOTD was not entitled to the "two contract" statutory employer defense, the court unambiguously stated, "DOTD does not occupy the position of a principal contractually obligated to a third party to perform a specific task. Rather, DOTD occupies the position of the third party hiring a general contractor, Madden." *Id.* at 792. Stated differently, a third party, such as DOTD, was not entitled to avail itself of the "two contract" theory to support a statutory employer defense.

As applied to the instant lawsuit, it is clear that ExxonMobil is not a principal. Instead, it occupies the position of "third party" and is not entitled to statutory employer status under La. R.S. 23:1061(A)(2).

Under La. R.S. 23:1061(A)(2), statutory employers are clearly those who contractually obligate themselves to a third party and then subcontract out all or part of the work to be performed. Despite the unexplained holding in *Orillion,* ExxonMobil simply does not fit the characteristics of a principal. More importantly, according to the rationale in *Thomas,* the relationship among the parties under these facts precludes an application of the "two contract" theory to support a statutory employer defense for ExxonMobil. Hence, ExxonMobil's reliance on the "two contract" statutory employment defense is misplaced.

## IV. CONCLUSION

Accordingly, for the reasons provided herein, ExxonMobil's motion for summary judgment (doc. 18) is hereby DENIED. Furthermore, the court is cognizant of ExxonMobil's motion to strike (doc. 25) the affidavit of Cory Beaver. The court did not consider the plaintiff's affidavit in rendering its ruling on this matter. Considering this fact, ExxonMobil's motion to strike (doc. 25) is hereby DENIED as moot.